**IN THE UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JANE DOE, | |
| Plaintiff, | **Civil Action No. 2:26-cv-213-WSH** |
| v. | |
| BLANK ROME, LLP | |
| Defendant, | |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE
UNDER PSEUDONYM**

Defendant Blank Rome, LLP ("the Firm") respectfully submits the following response to

Plaintiff Jane Doe's ("Plaintiff's") Motion for Leave to File Under Pseudonym (the "Motion.").

**I.    INTRODUCTION**

While the Firm is sympathetic to a Plaintiff's desire to remain anonymous about allegations

involving an alleged sexual assault, the facts and circumstances of this case simply do not satisfy

the legal factors this Court must consider in assessing Plaintiff's Motion. *Doe v. Court of Common*

*Pleas of Butler Cnty. PA*, 2017 WL 5069333, at *2 (W.D. Pa. Nov. 3, 2017) (Bisson, J.) ("*Butler*

*Cnty.*"). The gravamen of Plaintiff's Complaint is not that the Firm is somehow responsible for

the alleged assault. Rather, Plaintiff alleges that the Firm did not, in her subjective view, do enough

to separate her from another associate after a sexual encounter, about which the participants dispute

whether it was consensual. This event occurred during a social gathering at another attorney's

home, not sponsored by the Firm, to which Plaintiff invited Associate A. At the gathering, Plaintiff

and Associate A both drank to the point of extreme intoxication and then voluntarily entered the

homeowners' bedroom together. At the time, Plaintiff said she did not remember what happened

in the bedroom; Associate A said they engaged in consensual sex. In the days that followed,

without any recollection, Plaintiff speculated that something bad must have happened and began

characterizing the encounter as a sexual assault. The police investigated the incident, and to the Firm's knowledge no charges have been brought.

Plaintiff has already put the Firm and Chief Human Resources Officer ("CHRO") at an unfair disadvantage. Plaintiff should have conferred with the Firm about proceeding anonymously before filing her Complaint. She could have, but did not, file the Complaint with a motion to seal. Instead, she chose to file a public complaint that she reasonably should have known would attract media attention, unilaterally and selectively naming the Firm and the Firm's CHRO, thereby inflicting immediate reputational harm and public opprobrium, without affording the Court with an opportunity to balance the parties' interests before the matter became public.

This unilateral action is even more troubling in light of this Court's previous holding that while "victims of sexual harassment and assault often face ridicule and further harassment when they file lawsuits or otherwise publicly disclose their allegations[,] … ***these concerns, while certainly reasonable, are not sufficient to outweigh the public's right to access court proceedings.***" *Butler County,* 2017 WL 5069333, at *2 (emphasis added). Allowing Plaintiff to file under pseudonym undermines the fairness of these proceedings while running afoul of the constitutional right of access to judicial proceedings. Anonymity is particularly inappropriate where, as here, Plaintiff levels serious accusations that threaten the reputations of an entire partnership and a named individual, while at the same time shielding her own identity. As in *Butler County*, and applying the multi-factor balancing test set forth by the Third Circuit in *Doe v. Megless*, 654 F.3d 404 (3d Cir. 2011), Plaintiff cannot carry her burden of overcoming the presumption of openness.

## II.    <u>FACTUAL BACKGROUND</u>

Although this Court need not resolve any factual disputes to rule upon this Motion, the facts as the Firm sees them are relevant to the factors this Court must consider. As set forth in the

Complaint and in the Firm's Position Statement and Supplemental Position Statement submitted to the EEOC,[1] on June 1, 2024, Plaintiff, then an associate in the Firm's Pittsburgh office, attended a social gathering—not in any way sponsored by the Firm—at the home of a then (but now former) Blank Rome Partner ("Partner A") to which Plaintiff invited "Associate A."

The Firm learned that significant amounts of alcohol were consumed at the gathering, and that both Plaintiff and Associate A became intoxicated. At some point, Plaintiff and Associate A entered the homeowners' bedroom without Partner A's or her husband's knowledge. Sometime thereafter, Partner A, her husband, and another guest noticed the two were missing and searched the house. Partner A reported to the CHRO that after entering the bedroom, she found Plaintiff crying on the floor with her head under the bed-frame and with her dress pulled up. Associate A, clothed, was on the floor next to the bed and largely unresponsive. No one witnessed what happened in the bedroom between Plaintiff and Associate A. Partner A then called another Firm partner, referred to as "Partner C" in the Complaint, and requested she come to her home, and Partner A's spouse contacted the police. Plaintiff—who was intoxicated and could not recall what had occurred—reported to Partner C that she was embarrassed and did not want others to know about the incident. Nevertheless, Partner C told Plaintiff that Partner C had to report the incident to Human Resources, in accordance with the Firm's policy.

The Firm immediately investigated this matter.  The next day, on June 2, 2024, the Firm's CHRO spoke to Plaintiff, who did *not* report at this time that she believed she had been assaulted. In fact, Plaintiff reported that she could not recall what had happened in the bedroom, but requested

---

[1] True and accurate copies of the firm's EEOC Position Statements are attached hereto as Exhibits A and B. They have been redacted to remove Plaintiff's name, as well as the names of other individuals who are anonymized in the Complaint. The Supplemental Position Statement has also been redacted to remove certain personal information that Plaintiff presumably would seek to keep confidential, *e.g.*, her base compensation while employed at the firm.

a leave of absence and then subsequently to be separated from Associate A. The Firm took immediate action to address the situation, including as follows: (i) ensuring that the two Associates were not assigned on the same matters so Plaintiff did not have to work with Associate A; (ii) physically separating them by moving Associate A's office away from hers; (iii) instructing Associate A not to interact with her; and (iv) given Plaintiff's express wishes to limit the number of people who knew about the incident, asking Plaintiff to directly communicate with the CHRO if she had any concerns about future interactions. Plaintiff does not allege she reported, and she did not report, any sexually harassing conduct by Associate A thereafter.

In December 2024, Plaintiff filed an EEOC complaint (with no anonymity requested) against the Firm. She claimed that the Firm had not done enough to ameliorate the situation because of her anxiety about seeing and having to interact with Associate A on infrequent occasions when they might be in the office at the same time. Plaintiff and the Firm agreed to a formal rotation system so that the two would never be in the office together. When told of the EEOC charge and the proposed rotation system in February 2025, Associate A decided it was in his own interests to work fully remotely, thereby alleviating any concerns about interactions in the office. Plaintiff was then able to work either remotely or come to the office as she saw fit.

The Firm never engaged in any retaliatory conduct against Plaintiff. She continued to receive significant professional opportunities, and after the close of the year in 2024, she received excellent reviews, as well as bonuses and salary increases higher than any other associate in the Pittsburgh office. From December 1, 2024, to March 21, 2025, the date of her resignation, Associate A and Plaintiff were in the office at the same time only once. There is no allegation that there was any interaction between the two associates on that one day of overlap.

4

### III.    <u>LEGAL STANDARD</u>

There is a strong presumption in favor of public access to judicial proceedings. *See Megless*, 654 F.3d at 408. Filing a complaint under pseudonym "runs afoul of the public's common law right of access to judicial proceedings." *Id.* (quoting *Does I Thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1067 (9th Cir. 2000)). Moreover, "defendants have a right to confront their accusers." *Id.* (citing *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979)). For these reasons, Federal Rule of Civil Procedure 10(a) requires that plaintiffs identify themselves by name in the complaint. *Id.* (citing Fed. R. Civ. P. 10(a)).

In "exceptional cases," the trial court may allow the plaintiff to file under a pseudonym. *Id.* To do so, the plaintiff must demonstrate "both (1) a fear of severe harm, and (2) that the fear of severe harm is reasonable"—mere embarrassment or economic harm is *not* sufficient. *Id.* (quoting *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Estate*, 596 F.3d 1036, 1043 (9th Cir. 2010)). The court must then "balance a plaintiff's interest and fear against the public's strong interest in an open litigation process." *Id.* The Third Circuit has set forth the following six factors, weighing in favor of the plaintiff's continued anonymity:

> (1) [T]he extent to which the identity of the litigant has been kept confidential; (2) the bases upon which disclosure is feared or sought to be avoided, and the substantiality of these bases; (3) the magnitude of the public interest in maintaining the confidentiality of the litigant's identity; (4) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigant's identities; (5) the undesirability of an outcome adverse to the pseudonymous party and attributable to his refusal to pursue the case at the price of being publicly identified; and (6) whether the party seeking to sue pseudonymously has illegitimate ulterior motives.

*Id.* at 409 (quoting *Doe v. Provident Life and Acc. Ins. Co.*, 176 F.R.D. 464, 467–68 (E.D. Pa. 1997)). Additionally, the court must consider these three factors, weighing in favor of disclosure:

> (1) [T]he universal level of public interest in access to the identities of litigants; (2) whether, because of the subject matter of this

litigation, the status of the litigant as a public figure, or otherwise, there is a particularly strong interest in knowing the litigant's identities, beyond the public's interest which is normally obtained; and (3) whether the opposition to pseudonym by counsel, the public, or the press is illegitimately motivated.

*Id.* (quoting *Provident Life and Acc. Ins. Co.*, 176 F.R.D. at 467–68).

## IV.    ARGUMENT

After weighing the *Megless* factors, this Court should deny Plaintiff's request to prosecute her case anonymously, because permitting her to do so would place the Firm at a "serious disadvantage" and infringe upon the constitutional interest in public access to judicial proceedings. *See Court of Common Pleas of Butler Cnty. PA*, 2017 WL 5069333, at *2–3. Denial is particularly appropriate in this case because Plaintiff's own allegations make it easy for non-parties to ascertain her identity.

### A.    Analysis of the Six Factors Favoring Anonymity Weigh in Favor of Disclosure.

The first factor to consider—whether Plaintiff's identity has been consistently kept confidential—provides ample support in favor of disclosure. *See Megless*, 654 F.3d at 410. Plaintiff alleges she has "continued to [sic] her concentrated efforts to remain anonymous and has done everything within her own power to that effect until this point." (ECF No. 6, Pl.'s Mot. ¶¶ 16–18.) But the Complaint itself contradicts this allegation. Not only did Plaintiff disclose the name of the law firm where she worked, as one of the few women associates in its Pittsburgh office, she also disclosed the name of her law school, the month and year she started working at the firm, the general nature of her practice, and the date of her departure. All of that information can be used to identify Plaintiff through a properly formed Boolean Google search. Presumably, if Plaintiff did not want her identity revealed, she would have sought to conceal the name of her prior employer, as well as her law school and dates of employment.

6

*Second*, Plaintiff has not articulated a reasonable fear of "severe harm" if ordered to comply with Rule 10(a).[2] *See Butler Cnty. PA*, 2017 WL 5069333, at \*3 (denying motion to proceed anonymously where plaintiff alleged sexual assault by employer). Plaintiff's alleged "fears for her physical and mental health and safety" stem primarily from interactions with Associate A. (*See, e.g.*, ECF No. 1, Compl. ¶¶ 120, 135–36, 140–41.) Those fears will not be minimized by a pseudonym, as Associate A knows her identity. *See id.* at \*3 ("Plaintiff has not articulated a reasonable basis to believe that her safety will be jeopardized if her identity is disclosed.").

Likewise, Plaintiff's speculation that her professional interests and ability to represent clients may be affected is insufficient to rebut the presumption of public openness. *See Doe v. Law Offices of Robert A. Schuerger Co.*, 2018 WL 4258155, at \*2 (D.N.J. Sept. 6, 2018) ("the potential loss of professional standing" not a sufficient basis to allow plaintiff-lawyer to proceed under pseudonym). Finally, as in *Butler County*, Plaintiff is not a minor. *See* 2017 WL 5069333, at \*2 ("Where victims are not minors, courts are generally less inclined to let the alleged victim proceed in litigation under a pseudonym.") (internal citations omitted). While Defendant is cognizant of the general potential increased risk of harm to alleged victims of sexual assault, Plaintiff has not articulated a basis to rebut the presumption of openness *in this case*.

*Third*, Plaintiff contends that some alleged sexual assault victims may feel emboldened to bring their claims if they can do so anonymously. (ECF No. 6, Pl.'s Mot. ¶¶ 26–27.) That said, this Court has emphasized that such allegations, by themselves, are not enough to overcome the presumption of openness:

---

[2] Plaintiff's cases from outside this district are readily distinguishable. *See Doe v. Rutgers*, 2019 WL 1967021, at \*3 (D.N.J. Apr. 30, 2019) (anonymity warranted where plaintiff alleged "extreme psychological distress" including multiple suicide attempts; "[i]n light of this alleged history of significant mental health issues and self-harm arising out of the underlying events, Plaintiff's contention that she will suffer 'emotional distress, mental anguish, anxiety ... [and] humiliation' goes beyond a boilerplate assertion that she will be embarrassed if she is publicly identified."); *Doe v. Evans*, 202 F.R.D. 173 (E.D. Pa. 2001) (anonymity warranted where plaintiff alleged assault by public official, namely a state trooper).

> Notably, the Court deals with cases alleging sexual harassment and assault on a regular basis. In the vast majority of these cases, the plaintiffs file the lawsuit under their own names. Finding that these types of allegations are a valid reason to permit a plaintiff to proceed with a pseudonym would open up the Court to requests for anonymity each time a plaintiff makes allegations of sexual harassment or assault.

*Butler Cnty.*, 2017 WL 5069333, at *2.

*Fourth*, this is not a case where the outcome of the litigation likely rests on purely legal matters, where "there is an atypically weak public interest in knowing the litigant's identities." *Megless*, 654 F.3d at 409 (internal citations omitted). To the contrary, the present inquiry is fact-intensive, therefore warranting disclosure of the parties' identities. *See id.* at 410. Indeed, there has already been media attention.

*Fifth,* this Court must assess whether Plaintiff will forego her claims if the Motion is denied. *Id.* at 409. Plaintiff mentions this factor but does not allege she will forego her claims if ordered to comply with Rule 10(a). (ECF No. 7, Pl.'s Br. at 7–8.)

*Sixth*, as to Plaintiff's purpose in pursuing anonymity, it is notable that although Plaintiff seeks to conceal her own identity based on claimed reputational and professional concerns, she chose to inflict the same harm on the Firm and its CHRO. She accuses the CHRO of a "lack of compassion" and "callous" attitude that "exacerbated [Plaintiff's] fear for her personal safety." (ECF No. 6, Pl.'s Mot. ¶¶ 137, 174.) She casts aspersion upon the character of others about whom she publicly alleges information that makes them readily identifiable. Such serious allegations, with the resulting public pressure on the Firm, are not taken lightly. The mere filing of a complaint subjects the Firm, the CHRO, and the easily identified other Firm employees to "public humiliation" and risk of reputational damage—no matter the accuracy of the allegations. *Butler Cnty.*, 2017 WL 5069333, at *3. "Fundamental fairness demands" that Plaintiff not be permitted to "cast aspersions … while hiding behind a pseudonym." *See Rose v. Beaumont Indep. Sch. Dist.*,

240 F.R.D. 264, 268 (E.D. Tex. 2007); *see also Amnesty Am. v. Cnty. of Allegheny*, 822 F.Supp. 297, 301 (W.D. Pa. 1993) (in the context of sexual assault allegations, "fairness to these defendants outweighs any right to privacy of the … plaintiffs to proceed anonymously").

### B.     The Three Factors Favoring Public Disclosure Weigh Against Anonymity.

Consideration of the three factors in support of public disclosure yields the same result. The first factor favoring disclosure relates to the public interest in the parties' identities. *Megless*, 654 F.3d at 410. The *Megless* court emphasized that "[t]here is **universal** public interest in access to the identities of litigants. This weighs in favor of disclosing Doe's identity." *Id.* at 411 (emphasis added). That same reasoning applies here. The second factor—whether there is a heightened interest in the present proceedings—similarly weighs in favor of openness. Indeed, as Plaintiff notes, there is a heightened public interest in the present case because the Firm is a national legal firm. (ECF No. 6, Pl.'s Mot. ¶ 24.) Unsurprisingly, the filing of the suit, against an AmLaw 100 law firm, has already drawn attention in the legal press. *See, e.g.*, https://www.abajournal.com/news/article/former-blank-rome-associate-sues-firm-over-alleged-sexual-assault-by-colleague (last visited February 23, 2026).

Finally, the third factor under consideration is whether the Firm opposes Plaintiff's anonymity for nefarious reasons. *Megless*, 654 F.3d at 410. Plaintiff maintains that the only possible reason that the Firm would oppose this Motion is further "retaliation" against her because her identity is "inconsequential" to its defense. (ECF No. 6, Pl.'s Mot. ¶ 40.) But as set out above and in the firm's EEOC Position Statements, there was no "retaliation." Rather, the Firm investigated as best it could, abided by Plaintiff's request to limit disclosure to her coworkers, and took steps to separate the two—all while still affording Plaintiff significant work opportunities and

substantial bonuses and salary increases greater than those of any other Pittsburgh associate. Thus, the Firm's position in opposing the motion relies on well-settled legal requirements.[3]

This Court has acknowledged that "[p]ublic claims in a civil lawsuit can 'cast a shadow over the defendant's reputation[.]'" *Butler Cnty. PA*, 2017 WL 5069333, at *3 (quoting *Doe v. Indiana Black Expo, Inc.*, 923 F. Supp. 137, 141 (S.D. Ind. 1996)). As a result, "basic fairness generally dictates that plaintiffs who publicly accuse defendants in civil suits must sue under their real names or else place defendants at a serious disadvantage." *Id.* (internal quotations omitted).

Because the aforementioned factors weigh in favor of openness, and to ensure fairness throughout the proceedings, this Court should deny Plaintiff's Motion.

## V.    CONCLUSION

For the reasons set forth above, Defendant respectfully requests that this Court deny Plaintiff's Motion for Leave to File Under Pseudonym and order that Plaintiff file an amended complaint identifying herself in accordance with Federal Rule of Civil Procedure 10(a).

---

[3] During a February 25, 2026, telephonic conference with the Court, Plaintiff's counsel stated they would seek leave to file a Reply in support of the Motion because, they claimed, firm management disclosed Ms. Doe's identity to the attorneys and staff in the Pittsburgh office despite her pseudonymous filing. During a February 27, 2026, meet-and-confer of all counsel, Ms. Doe's counsel further elaborated that the firm's General Counsel "sent an email" to "the entire Pittsburgh office" naming both Ms. Doe and Associate A. Undersigned counsel investigated this claim and learned the following: First, in the days leading up to the filing of the Complaint, despite numerous email and phone communications with Plaintiff's counsel about her intention to file suit by the end of the week of February 1st, counsel never indicated that Ms. Doe intended to proceed anonymously, and even ignored an email request by the Firm's counsel for a copy before the Complaint was filed. Thus, on Friday, February 6th, The General Counsel, not knowing the Complaint had been filed anonymously, sent an email to the Pittsburgh office with the subject line "Anticipating Media Inquiries" regarding the Firm's media policy. That email is privileged, but the Firm can make it available to the Court for *in camera* review if necessary. Second, *even if* Plaintiff's counsel had informed the Firm before she filed that she wanted to proceed anonymously, *Megless* addresses the use of a pseudonym on the *public* court docket. It does not permit Plaintiff to demand a "gag order" limiting the General Counsel's privileged communications, executing a Firm policy, *within the Firm itself*. Finally, it is unclear whether Plaintiff and her counsel have a copy of the privileged email or have simply received from an unauthorized source an oral report of its contents—regardless, they should be required to disclose the source.

Dated: March 23, 2026

Respectfully submitted,

*/s/ Christina Manfredi McKinley*
Christina Manfredi McKinley
I.D. No. 320001
Blank Rome LLP
501 Grant Street, Suite 850
Pittsburgh, PA 15219
(412) 932-2800
Christina.McKinley@BlankRome.com

James T. Smith, I.D. No. 39933
(admitted *pro hac vice*)
Anthony B. Haller, I.D. No. 37017
Rebecca D. Ward, I.D. No. 79547
(admitted *pro hac vice*)
Blank Rome LLP
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
jim.smith@blankrome.com
rebecca.ward@blankrome.com

*Attorneys for Defendant*

11